UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRESCENT CITY SURGICAL OPERATING COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-2625** |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, ET AL** | **SECTION L(1)** |

### ORDER & REASONS

Pending before the Court is a Motion to Reconsider and Set Aside Orders Granting Motions to Compel Arbitration and Stay Proceedings filed by Plaintiff Crescent City Surgical Operating Company ("Crescent City"). R. Doc. 43. The Defendants, four insurance companies, oppose the motion. R. Doc. 48. Crescent City replied. R. Doc. 56. Considering the record, briefing, and applicable law, the Court now rules as follows.

**I.    BACKGROUND**

This case arises from alleged damage to Plaintiff Crescent City's commercial property (the "Property") during Hurricane Ida, which was insured at the time by a domestic insurer called Independent Specialty Insurance Company ("Independent Specialty");[1] another domestic insurer called Interstate Fire & Casualty Company ("Interstate Fire");[2] and two foreign insurers through the Lloyd's of London insurance market (collectively, the "Insurers"). R. Doc. 1-2 at 2. Each of these insurers issued separate policies of insurance covering the Property, which are contained in a single document that was managed and executed by Velocity Risk Underwriters, LLC (the "VRU Policy"). R. Doc. 1-5 at 66. The VRU Policy provides that the two domestic insurers, Interstate

---

[1] Independent Specialty is a U.S. insurance company with its principal place of business in Bedford, Texas. R. Doc. 1-5 at 7.
[2] Interstate Fire is a U.S. insurance company with its principal place of business in Chicago, Illinois.

1

Fire and Independent Specialty, were collectively responsible for 68% of the named business interruption coverage, while the two international corporate entities providing coverage vis-à-vis their membership in syndicates organized under the Lloyd's insurance market were responsible for the remaining 32%.[3] *Id.* at 65.

On June 28, 2022, Crescent City filed the instant lawsuit in state court against the domestic and international insurers as well as Velocity Risk Underwriters.[4] R. Doc. 1-2. It alleges that as a result of Hurricane Ida, it suffered both property damage and a significant loss of business earnings/payroll expenses purportedly covered by the VRU Policy.[5] *Id.* at 2. Crescent City avers that it provided satisfactory proof of loss to the Insurers after the storm, but they have continually failed to pay for the covered loss. *Id.* Accordingly, Crescent City asserts that the Insurers are liable for their (1) breach of insurance contract under Louisiana law, (2) failure to properly evaluate and timely adjust the claim, and (3) failure to pay business interruption costs. *Id.* at 3. The Insurers subsequently removed the matter to this Court on the basis of diversity jurisdiction. R. Doc. 1. After the case was removed, the Insurers filed an unopposed motion to compel arbitration pursuant to the VRU Policy's arbitration clause and requested a stay of the litigation. R. Doc. 9. This Court ultimately granted the motion on January 27, 2023 and stayed the matter pending the outcome of the mandated arbitration proceedings. R. Doc. 23.

---

[3] The Court recognizes Lloyd's of London is not an insurer *per se*. Rather, it is an international insurance market in London, England, that provides the infrastructure for entities, called names or members, to insure a portion of a risk instead of insuring the entire risk itself. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010). These members subscribe to the risks through syndicates, which are administrative entities. *Id.* Here, only two members insured the policy through the Lloyd's insurance market. R. Doc. 1 at 3. Nephila 2357 Ltd. is a private limited company incorporated under the laws of England and Wales that subscribed to the VRU Policy through Syndicate 2357. *Id.* RenaissanceRe Corporate Capital (UK) Limited is also a private limited company incorporated under the laws of England and Wales that subscribed to the VRU Policy through Syndicate 1458. *Id.*

[4] The Insurers asserted in their Notice of Removal that Velocity Risk Underwriters is improperly joined in this suit because it is not considered an insurer under the VRU Policy. R. Doc. 1 at 10. However, Velocity has not yet been dismissed from the case.

[5] Crescent City estimates that its loss of earnings totals $974,925.42 due to the closure of its business from August 30, 2021 to September 13, 2021. R. Doc. 1-1 at 2.

In May of 2024, the Insurers filed another motion asking this Court to enforce the arbitration agreement and appoint an arbitrator and umpire as required under the arbitration agreement. R. Doc. 28-1 at 1. Crescent City opposed the motion. R. Doc. 29-1 at 2, 14. It argued the Insurers had deliberately delayed the arbitration in bad faith by refusing to agree to its proposed arbitrator and umpires, and that such objections rendered the arbitration clause incapable of being performed. *Id.* at 3. As such, Crescent City asked this Court to deny the Insurers' motion and lift the stay in the case. *Id.* at 21; R. Doc. 32. After hearing oral argument on the matter, the Court granted the Insurers' motion and provided the parties with a detailed process and timeline to select the remaining members of the arbitration panel. R. Doc. 38. Since the issuance of this order on June 28, 2024, it appears the parties have successfully agreed upon Crescent City's arbitrator and umpire selections and are in the midst of the arbitration process. R. Docs. 43-2, 48. Crescent City, however, recently requested and obtained a stay of the ongoing arbitration proceedings to file the present motion. R. Doc. 48. at 2.

## II.     PRESENT MOTION

Crescent City now moves this Court to vacate its January 27, 2023 order compelling arbitration and staying the case, pursuant to Federal Rule of Civil Procedure 54(b). R. Doc. 43-2. It argues that the Louisiana Supreme Court's recent ruling in *Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co.* constitutes an intervening change in the law clarifying that arbitration clauses in a contract for surplus line insurance, such as the clause in the present case, are void under Louisiana Revised Statute § 22:868. *Id.* at 5. Accordingly, it contends that arbitration is no longer warranted at least against the domestic insurers, and that this action must properly proceed in this Court. *Id.* at 8. In support, Crescent City cites another section of this Court's recent ruling in *Jay VMK, LLC v. Independent Specialty Insurance Co., Inc.* that expressly

3

adopted *Police Jury* and declared an arbitration clause similar to the one in the VRU Policy ineffective as to the domestic insurers. *Id.* at 7-8.

The Insurers oppose the motion on three separate grounds. R. Doc. 48. First, they argue that the arbitration provision contained in the VRU Policy remains enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), an international treaty that establishes uniform standards for enforcing foreign arbitration awards and agreements. *Id.* at 12-13, 15. Second, the Insurers contend that Crescent City is "estopped" from avoiding its agreement to arbitrate by litigating against the domestic insurance companies under federal common law. *Id.* at 15-18. Third, the Insurers assert that even if the applicable arbitration clause is deemed unenforceable, a stay of the entire case would still be warranted because "the liability of the insurers is inherently inseparable and based on the same operable facts." *Id.* at 18-19. They thus take the position that allowing parallel proceedings could potentially destroy the international Insurers' right to a "meaningful arbitration." *Id.* In reply, Crescent City argues that the Insurers improperly rely on Fifth Circuit case law that predates the Louisiana Supreme Court's decision in *Police Jury* and that it is now settled law that "equitable estoppel" cannot provide a basis for mandating arbitration with respect to domestic insurers. R. Doc. 56 at 8-10, 20.

Before proceeding, the Court notes that the only question posed in this case is whether Crescent City must arbitrate its claims against the *domestic* insurers – Interstate Fire and Independent Specialty. The Fifth Circuit has made clear that in contracts involving foreign parties, the Convention preempts state law and requires the enforcement of arbitration clauses. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 718 (5th Cir. 2009). Although not stated directly, Crescent City seemingly does not dispute that it must arbitrate any

4

claims against the foreign insurers. Indeed, it writes in its reply that if this Court vacates its order and lifts the stay, it can then "file a motion to dismiss [D]efendant Lloyd's, the only non-domestic insurer herein, and set this matter for a status conference." R. Doc. 56 at 21. The Court will thus proceed accordingly.

### III. APPLICABLE LAW

Rule 54 provides that district courts "possess[] the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco*, 659 F.2d 551, 552 (5th Cir. 1981). Under such a standard, district courts can be "more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017). Relevant considerations when ruling on a Rule 54(b) motion include "(1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact." *Henry v. New Orleans La. Saints, L.L.C.*, No. 15-5971, 2016 WL 3524107, at *2 (E.D. La. June 28, 2016). Courts may also grant reconsideration when "necessary to prevent manifest injustice." *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998).

### IV. LAW & ANALYSIS

Crescent City's motion raises three issues that this Court must address in determining whether to reopen this case and lift the stay currently imposed. The Court takes each in turn.

#### A. The Agreement Is Not Enforceable Under the Convention With Respect to the Domestic Insurers.

First, the Court addresses the Insurers' contention that the instant arbitration clause contained in the VRU Policy is enforceable against both the foreign *and* domestic insurers because it falls under the Convention.

5

### 1. The Court Will Apply the Fifth Circuit's Four-Prong Convention Analysis.

The Convention is an international treaty with "the principal purpose . . . to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced by the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). In 1970, the United States acceded to the treaty through the Convention Act, which was subsequently implemented by Chapter 2 of the Federal Arbitration Act (the "FAA"). *Johnson v. NCL (Bahamas) Ltd.*, 163 F. Supp. 3d 338, 352 (E.D. La. 2016). The Convention requires contracting states, including the United States, to recognize certain written arbitration agreements:

> Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

The Convention, Article II(1). The Article thereafter defines "agreement in writing" to include "an arbitral clause in a contract or an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams." *Id.*

In applying the Convention, the Fifth Circuit has held that it "contemplates a very limited inquiry by courts when considering a motion to compel arbitration." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1144–45 (5th Cir.1985). Accordingly, district courts should only compel arbitration if the following four-prong test is met: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002).

Here, the Court finds that the first three prongs are easily met. First, the VRU Policy's

arbitration provision constitutes a written agreement to arbitrate the parties' legal disputes related to the policy under New York law. Second, the VRU Policy indicates arbitration is to take place in the United States, a signatory of the Convention. Third, the parties' agreement to arbitrate arises out of a surplus line insurance contract that provides property damage and loss of profits coverage to Crescent City presumably related to its business as a medical care facility. *See Francisco*, 293 F.3d at 273 (citing 9 U.S.C. § 202 *et seq.*) (defining a commercial legal relationship as any transaction, contract, or agreement involving commerce or maritime activates or a contract involving commerce). However, because two of the insurers subject to the arbitration provision—Independent Specialty and Interstate Fire—are considered U.S. insurance companies, it is less clear whether the fourth prong requiring at least one foreign citizen be a party to the agreement can be met.

### 2. Crescent City's Agreements to Arbitrate With the Domestic Insurers Do Not Fall Under the Convention Because There is No Important Foreign Element as Required by Fifth Circuit Jurisprudence.

As an initial matter, the Court notes that although the parties' terms of coverage are consolidated into a single policy document, the VRU Policy explicitly provides that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Insurers." R. Doc. 1-5 at 66. It further states that "evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriters at Lloyd's with any other insurance company(ies)." *Id.* Essentially, these contractual provisions require the Court to construe the VRU Policy's arbitration clause as separate, distinct agreements to arbitrate between Crescent City and each insurer. This interpretation of the policy is crucial to the fourth prong's analysis because as separate contracts, Crescent City's independent agreements to arbitrate with each of the domestic insurers respectively are entirely between United States' citizens, separate and apart from its agreement to

arbitrate with the foreign insurers that subscribed to the policy vis-à-vis Lloyd's. This is troublesome for the Insurers' position because the fourth prong of the Convention analysis seemingly contemplates the presence of at least one foreign citizen to an arbitration agreement for the treaty to apply.

However, the Fifth Circuit in *Freudensprung v. Offshore Technical Services*, *Inc.* held that the mere lack of a foreign citizen as a party to an arbitration agreement does not render the Convention inapplicable *per se*. 379 F.3d 327, 339-340 (5th Cir. 2004) ("[W]e must further examine whether the lack of a foreign citizen as a party to the agreement renders the Convention inapplicable. We conclude it does not."). In reaching its decision, the court recognized that Section 202 of the FAA expressly allows for arbitration agreements wholly between two U.S. citizens to fall under the Convention when the commercial relationship: (1) "involves property located abroad," (2) "envisages performance or enforcement abroad," or (3) "has some other reasonable relation with one or more foreign states." *Id.* at 340. Further, the court cited Second and Seventh Circuit case law agreeing that the Convention may apply in such cases provided that there is some "important foreign element." *Id.* at 340-41 (discussing the implications of *Jones v. Sea Tow Servs., Inc.,* 30 F.3d 360, 366 (2d Cir.1994 and *Lander Co. v. MMP Investments, Inc.,* 107 F.3d 476, 481 (7th Cir. 1997)). But the court clarified that the "reasonable connection between the parties' commercial relationship and a foreign state . . . [must be] independent of the arbitral clause itself." *Id.* at 341. Accordingly, the fourth prong of the Convention analysis may still be met without a foreign party to the arbitration agreement in scenarios where the underlying contract has sufficient ties to the international sphere enumerated in Section 202. *Id.*; *see also 1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. CV 20-2326, 2020 WL 7342752, at *4 (E.D. La. Dec. 14, 2020) (holding agreements between United States citizen may fall under the Convention

pursuant to Section 202 of the FAA).

Here, the Insurers acknowledge that the VRU Policy contemplates separate contracts between Crescent City and each insurer. However, they contend that the divided structure of the policy is immaterial because Crescent City's agreements to arbitrate with the two domestic insurers have a "rational relationship" to a foreign state, namely the United Kingdom. As such, the Insurers assert that the fourth prong of the Convention analysis is met and that the domestic insurers should still be compelled to arbitrate in light of *Freudensprung* and the statutory text of 9 U.S.C. § 202. The Court disagrees.

The VRU Policy is devoid of an "important foreign element" that warrants the import of the Convention in an entirely domestic context for the following reasons. First, the commercial relationship at issue is two sets of insurance contracts between U.S. companies involving property located in the United States, not a foreign territory. Second, the VRU policy does not "envisage" performance of any kind abroad; rather, a U.S. company managed both payment of the premiums and coverage under the policy. Third, the VRU Policy provides that the domestic insurers supplied a majority of the coverage to Crescent City, while the Lloyd's syndicates were only allocated 32% of the risk. Fourth, the Insurers' assertion that the VRU "would not exist if it were not for the foreign insurers and the Lloyd's of London marketplace" is without merit. There is simply no proof of this, given Independent Specialty and Interstate Fire did not use Lloyd's to subscribe to policy, and as noted above, the foreign insurers only cover a portion of the risk. Essentially, the only foreign element present here is the fact that Crescent City's insurance contracts (and thus their corresponding agreements to arbitrate) with the domestic insurers and foreign insurers are all contained in the same VRU Policy. However, the Court concludes that the mere consolidation of separate insurance contracts into a single policy document that just so happens to include a foreign

9

insurer is insufficient to prove a "reasonable relationship" to a *foreign state* worthy of subjecting a domestic insurer to the Convention. *See Freudensprung*, 379 F.3d 327 at 340. The Insurers fail to cite, nor could the Court find, any case law that stands for the proposition that the existence of a similar but wholly separate agreement to arbitrate with a foreign insurer is enough to warrant the application of the Convention to an arbitration agreement with a domestic insurer. Such a holding would have sweeping effects on the insurance industry writ large and expand the scope of the Convention, which was enacted to promote uniformity in the *international* context, not the *domestic*.

The Court further disagrees that just because the foreign insurers subscribed to the VRU Policy vis-à-vis the Lloyd's of London insurance market, there is a "reasonable relation" to a foreign state that justifies applying the Convention to the domestic insurers. Specifically, the Court finds that the Insurers have misread and thus improperly based this argument off of an unpublished decision from the Western District of Washington, *CLMS Management Services Limited Partnership v. Certain Underwriters at Lloyd's, London*. No. 3:19-CV-05785-RBL, 2019 WL 7185547 (W.D. Wash. Dec. 26, 2019), *aff'd*, 8 F.4th 1007 (9th Cir. 2021). In that case, the only question before the district court was whether the insurers subscribing to the policy through Lloyd's were subject to the Convention even though "the Policy itself [did] not identify where each syndicate is from." *Id.* at *6. In analyzing the fourth prong of the Convention analysis, the court held that ascertaining the domiciliary status of each member of the syndicates was not required because a reasonable relationship existed between the insurance contract and the United Kingdom, given the Lloyd's insurance market was used to underwrite the whole policy. *Id.* The Court thus compelled arbitration pursuant to the Convention as to all the foreign entities providing coverage through Lloyd's. *Id.* Applying this rationale to the present case, it is clear *CLMS*

10

*Management* is inapposite. Plaintiff appears to recognize that it must arbitrate its claims with all entities who underwrote the policy through Lloyd's syndicates. Rather, this dispute is about whether Independent Specialty and Interstate Fire, as domestic insurers that did not provide coverage through Lloyd's, can be compelled to arbitrate under the Convention. The foreign insurers' independent decision to engage with a foreign insurance market has no bearing on the domestic insurers separate contracts with Crescent City.

Therefore, the Court finds that Crescent City cannot be compelled to arbitrate its claims against Independent Specialty and Interstate Fire through the Convention.

### B. The Arbitration Clause in the VRU Policy Is Null and Cannot Be Enforced Under Principles of Equitable Estoppel Per *Policy Jury*.

Next, the Court addresses whether Crescent City is estopped from litigating its claims in light of the Louisiana Supreme Court's recent decision in *Police Jury of Calcasieu Parish v. Indiana Harbor Ins. Co,* 2024-00449 (La. 10/25/24), 395 So. 3d 717, 722-25, *reh'g denied*, 2024-00449 (La. 12/12/24).

#### 1. The Key Takeaways from *Police Jury*

When the Convention applies, it preempts inconsistent state law and renders arbitration agreements valid. However, where the Convention does not apply, state law may operate to invalidate arbitration agreements in insurance contracts. *See Safety Nat'l*, 587 F.3d 714 (holding that state law "reverse preempts" the FAA pursuant to the McCarran-Ferguson Act). With this in mind, the Court now turns to a discussion of *Police Jury*. There, the Louisiana Supreme Court reached two distinct holdings. First, the court clarified that § 22:868(A) still operates to invalidate arbitration clauses in insurance contracts. *Police Jury*, 395 So. 3d at 722-25. This holding interpreting Louisiana law clearly abrogates prior, inconsistent Fifth Circuit case law which made an *Erie* guess as to this issue. *JAY VMK, LLC v. Indep. Specialty Ins. Co., Inc.*, No. CV 23-720,

11

2024 WL 4855525, at *2 (E.D. La. Nov. 21, 2024) ("Where the Fifth Circuit provided merely the guidance of an *Erie* guess, the Louisiana Supreme Court subsequently answered the question."). In the present case, it appears the Insurers concede this point as they fail to make a challenge on such grounds in their briefing.

Second, the court addressed whether plaintiffs could be required to arbitrate their claims against domestic insurers through principles of equitable estoppel. *Id.* at 728-30. Notably, just prior to the ruling in that case, the Fifth Circuit issued an opinion in *Bufkin Enterprises LLC v. Indian Harbor Insurance Co.* that held that the doctrine of "equitable estoppel" could be used to enforce foreign insurers' Convention-protected arbitration agreements against non-party domestic insurers. 96 F.4th 726, 731-32 (5th Cir. 2024). However, *Police Jury* expressly disagreed with the Fifth Circuit's application of equitable estoppel to bring domestic insurers into the ambit of the Convention. 395 So. 3d at 729 ("With all due respect, we disagree with the Federal Court's recent per curiam in *Bufkin*."). It observed that "[e]stoppel is not favored in our state's Civil Law System; rather, it is a doctrine of last resort." *Id.* As a disfavored doctrine, the court observed that "estoppel cannot prevail when in conflict with our state's positive written law." *Id.* And, the court continued, "[t]he *Bufkin* court failed to acknowledge that Louisiana has positive law" on this issue: § 22:848's prohibition of arbitration clauses in insurance contracts. *Id.* Therefore, the court reasoned, a domestic insurer "*may not* resort to equitable estoppel under state law to enforce an arbitration clause in another insurer's policy in contravention of the positive law prohibiting arbitration in La. R.S. 22:868(A)(2)." *Id.*

## 2. Based on this Court's Recent Ruling in *Belmont*, the Doctrine of Equitable Estoppel Cannot be Used to Enforce Crescent City's Arbitration Agreements with the Domestic Insurers.

Here, the Insurers argue that the Fifth Circuit's decision in *Bufkin* controls over *Police Jury*

and that principles of equitable estoppel under federal common law require Crescent City be estopped from avoiding its agreement to arbitrate. Crescent City asserts that *Police Jury* controls because equitable estoppel is a state law concept and its application to insurance contracts issued in Louisiana is thus ultimately a state law issue.

Given this Court's recent decision in *Certain Underwriters at Lloyd's London v. Belmont Commons, LLC*, 22-CV-3874, R. Doc. 78, the Court agrees with Crescent City. On facts substantially similar to those presently before the Court here, this Court assessed the applicable Supreme Court and Fifth Circuit case law and reached the following ruling:

> Overall, the Court concludes that whether a plaintiff can be compelled to arbitrate with a domestic insurer based on the plaintiff's arbitration agreement with a foreign insurer is a matter of state law, not federal law. *Outukumpo* compels this conclusion. 590 U.S. at 437. Further, the Fifth Circuit has clearly stated that whether a "non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate" through "equitable estoppel" is a matter of "state contract law" and not "federal common law." *Crawford*, 748 F.3d at 262. This precedent is applicable to the instant Convention case. *See Todd*, 601 F.3d at 334–35. . . . Accordingly, the Court concludes that equitable estoppel is governed by state law.
>
> This determination dictates the Court's conclusion that the Louisiana Supreme Court, rather than the Fifth Circuit, controls on the issue of estoppel. *See Ward v. State Farm Mut. Auto. Ins. Co.*, 539 F.2d 1044, 1050 (5th Cir. 1976) ("[T]he Supreme Court of Louisiana [] is the ultimate authority on questions of state law."). And the Louisiana Supreme Court, in *Police Jury*, unambiguously rejects the use of equitable estoppel to subject domestic insurers to the Convention. 395 So. 3d at 729. As such, the Court must agree with Plaintiffs that *Police Jury* . . . represents an "intervening change in the controlling law." Thus, the Court finds that reversal of its prior decision compelling Plaintiff to arbitrate its disputes with the nine domestic insurers is warranted. *See* Fed. R. Civ. P. 54(b).

Accordingly, the Court finds no reason to depart from its holding in *Belmont* and affirms that *Police Jury* constitutes an "intervening change in the controlling law." The Court thus concludes

13

that a reversal of its prior decision compelling Crescent City to arbitrate its disputes at least as it relates to Independent Specialty and Interstate Fire as domestic insurers is warranted. *See* Fed. R. Civ. P. 54(b).

### C. The Court Will Not Issue a Discretionary Stay.

Lastly, the Insurers argue that even if Crescent City cannot be compelled to arbitrate with the domestic insurers, the Court should exercise its discretion to stay the litigation pending conclusion of the arbitration proceedings against the foreign insurers. District courts have "broad discretion" to "stay proceedings in the interest of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "The party seeking a stay bears the burden of justifying a delay tagged to another legal proceeding." *Id.* "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). Factors the court considers include whether 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be "inherently inseparable"; and 3) the litigation must have a "critical impact" on the arbitration. *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). Finally, "before granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution of the other case." *Wedgeworth*, 706 F.2d at 545. Ultimately, it is the Court's duty to "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255.

Here, the Insurers assert that allowing Crescent City to proceed with the litigation could destroy the foreign insurers' right to a meaningful arbitration and urge this Court to continue the stay of the entire case while the Fifth Circuit decides the issues at bar. Such a request requires this

14

court to balance the foreign insurer's right to arbitrate meaningfully with Crescent City's right to litigate against the domestic insurers. The Court concludes that the balance of hardships weighs against a discretionary stay of the litigation. First, the Court notes that the parties' have struggled in appointing an arbitration panel over a two year period. The imposition of yet further delay, the Court finds, is too great and would unduly prejudice Crescent City given the large amount of insurance proceeds in dispute and the potential further deterioration of its Property. *Landis*, 299 U.S. at 255. Second, the Court recognizes another section of this Court opted to stay a case involving an insurance dispute on similar facts. *Southland Square Apartments, LLC v. Certain Underwriters at Lloyd's London*, No. CV 23-2329, 2024 WL 5086081, at *3 (E.D. La. Dec. 12, 2024). In that case, the court found a stay preferable, so that it could wait for the Fifth Circuit to address the applicability of equitable estoppel to arbitration clauses in light of *Police Jury*. *Id.* at *3. But here the Court has expressly agreed with *Police Jury* and waiting on a circuit decision is not required. Accordingly, the Court will not enter a discretionary stay in the case and allow Crescent City to litigate its claims against the domestic insurers.

V. **CONCLUSION**

For the foregoing reasons;

**IT IS HEREBY ORDERED** that Crescent City's Motion to Reconsider, R. Doc. 43, is **GRANTED** in part and **DENIED** in part. The Court will lift the stay and allow Crescent City to litigate its claims only as to the domestic insurers. Crescent City's agreement to arbitrate with the foreign insurers falls under the Convention and thus remains enforceable. *See Noble Cap. Fund Mgmt., LLC v. US Cap. Glob. Inv. Mgmt. LLC*, No. 1:20-CV-1247-RP, 2023 WL 4118570, at *9 (W.D. Tex. June 22, 2023) (allowing claims against some defendant proceed in court, while claims against others must be arbitrated).

New Orleans, Louisiana, this 17th day of January, 2025.

_____
United States District Judge